DAVID MYERS, Appellant

v.

ROBERT CANTON and MARIA CANTON, Their Heirs and Next of Kin; ADINA KEAN and OSMOND KEAN; THE WEST INDIAN COMPANY, LTD., and All Other Persons Claiming an Interest in Real Property No. 11 Nordsidevej, Queen's Quarter, St. Thomas, Virgin Islands

No. 17923

United States Court of Appeals

Third Circuit

Argued January 26, 1970

Decided May 11, 1970

*See, also, 7 V.I. 142*

CROXTON WILLIAMS, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellant*

GEORGE H. T. DUDLEY, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for appellees, Robert Canton & Maris Canton*

ALEXANDER A. FARRELLY, ESQ. (BIRCH, DEJONGH & FARRELLY), St. Thomas, Virgin Islands, *for appellees, Adina Kean and Osmond Kean*

Before HASTIE, *Chief Judge*, GANEY and STAHL,* *Circuit Judges*

## OPINION OF THE COURT

HASTIE, *Chief Judge*

This appeal has been taken from a judgment of the District Court of the Virgin Islands which denied the appellant's claim that he had acquired title to Lot No. 11 and Lot No. 11A, Nordsidevej, in St. Thomas, by adverse possession.

After an evidentiary hearing without a jury, the trial court made the following findings of fact:

"1. That in 1933, the plaintiff entered into possession of a small wooden house purchased from one Abraham Fince for the sum of $225.00.

"2. That while it was at first thought that the wooden house was located on Lot No. 11 Nordsidevej, a field inspection by the Office of the Tax Assessor in 1966 located it in fact on Lot No. 11A Nordsidevej, Charlotte Amalie, St. Thomas.

"3. That Lot No. 11 Nordsidevej has existed as a separate lot since survey of 1870 and Lot No. 11A Nordsidevej has been a separate lot since 1872, each with a separate chain of title.

"4. The amount paid yearly for taxes by plaintiff on Lot No. 11 throughout the years and until 1960 was $2.50, including the tax bill sent by the Tax Assessor for the year 1958, which bill recites payment of $2.50 for a superficiary house located on Lot No. 11, whereas, in fact there was no structure at that time on No. 11.

"5. That such taxes as were paid by plaintiff on Lot No. 11A were for a superficiary house, including the 1966 bill for $14.35 for improvements, such bill showing no assessment for taxes on the real property.

"6. That since January 1946, the defendants, Adina Kean and Osmond Kean, the owners of record of Lot No. 11A, have been paying the real property taxes thereon.

---

* Judge Stahl heard the argument and participated in the consideration of this appeal but died before decision.

"7. Plaintiff and his family were absent from St. Thomas between 1933 and 1952 while he served in the Merchant Marine and his family resided in New York City until his return to St. Thomas in 1961."

In the Virgin Islands, "The uninterrupted, exclusive, actual, physical, adverse, continuous, notorious possession of real property under claim or color of title 15 years" will divest the owner's title by adverse possession. 28 V.I.C. § 11 (1962). Despite the district court's finding "7", the evidence is clear and unchallenged that the appellant or his family did occupy the house in question and the surrounding land continuously for more than 15 years after he entered into possession in 1933.

In greater detail, land records and undisputed evidence in this case establish the following facts. Lots 11 and 11A, the properties in dispute, together constitute an approximately rectangular area about 150 feet long and 75 feet wide. At one time the entire rectangle was Lot 11. However, within and at one end of the original perimeter there had been carved out and recorded in 1872 a smaller rectangular lot about 50 feet long and 40 feet wide. The land records show separate chains of title for the two lots since 1872.

For several generations title to Lot 11 has remained in one family, the Cantons, who are defendants in this case. On two sides Lot 11 is contiguous to a very much larger property, named "Villa Santana". Villa Santana is an aggregation of several lots, but over the years it has been bought and sold as an entity with all of the constituent lots specified in the deed. Lot 11A is a part of Villa Santana, even though geographically Lot 11A protrudes into one end of Lot 11 and forms an anomalous and relatively insignificant appendage to Villa Santana.

The undisputed testimony of the plaintiff is that in 1932 a fence surrounded the entire rectangle which we now know to be Lots 11 and 11A. A small wooden two-room house stood within the fenced area. According to the plaintiff, dominion was then exercised over that property by a shoemaker named Finch, a man apparently connected with the Canton family. The plaintiff claims that after being shown the boundposts defining the rectangle he bought the entire fenced area from Finch in December, 1932, though admittedly he never received a deed. In 1933, he moved into the small house and lived there continuously for more than 15 years. He also testified without contradiction that he maintained chickens and goats on the enclosed land, which he thought to be, claimed, and used as his own.

Only in recent years, since the present controversy arose, has it been discovered that the plaintiff's house is actually on Lot 11A. Throughout his occupancy, the plaintiff has been paying real property taxes on Lot 11, believing that it included the small parcel later identified as Lot 11A. Apparently, though the pertinent tax records are not in evidence except for recent years, Villa Santana has long been taxed as a single property, including Lot 11A, throughout successive ownerships. In recent years the Keans, defendants in this suit and present owners of record, have paid the taxes on Villa Santana.

We think the conclusion is unavoidable that for more than 15 years, beginning in 1933, the plaintiff exercised adverse possession over a parcel of land which included both Lot 11 and Lot 11A. The defendants did not in any way rebut or discredit the testimony that at the beginning of plaintiff's occupancy the two lots constituted a single fenced area, that the plaintiff lived there in the little two-room house, and that he kept his chickens

and goats on the land and generally treated the entire enclosed rectangle as his own. All of this indicated a claim adverse to the record owners of both lots, and nothing appears that would reasonably cause the owners to believe that the plaintiff was asserting only a tenancy consistent with their title.

The principal contention of the defendants is that the small house bought from Finch and occupied by the plaintiff as his home was a "superficiary house", and therefore that its possession by the plaintiff did not disclose a claim adverse to their ownership of the land. This also was the theory of the district court.

■ ■ The law of the Virgin Islands recognizes that a "superficiary house" may be owned as personalty separate from the supporting land rather than as part of the realty. The owner of a superficiary house uses the land as a tenant or licensee for a term or at will, and enjoys the right to remove the house whenever his tenancy or permissive use of the land is terminated. Nicholson v. Altona Corp., 3d Cir. 1963, 4 V.I. 472, 320 F.2d 8, 10–11. Ordinarily, superficiary houses are small, easily movable wooden dwellings like the plaintiff's and "[u]nder the law the element of removability of the dwelling house in question is a basic factor." 320 F.2d at 11 (footnote omitted). But regardless of the character of the house, ownership of the house can only be separated from title to the supporting land when the house is occupied or erected by "a person, e.g., a tenant, who is lawfully entitled or permitted by the owner to occupy a piece of land. . . ." 320 F.2d at 11. In other words, the existence of a superficiary house depends first upon tenancy or permissive occupation of the land by the householder. At the same time or later, with the agreement or consent of the landowner, the householder may acquire separate ownership of a building affixed to the land.

505

██ ██ The present record does not establish the origin or early history of the house here in question. There is no evidence that any owner of either Lot 11 or Lot 11A consented that the plaintiff or any occupant who preceded him should occupy the land as a tenant or own a superficiary house on the land. Likewise, there is no indication that any defendant believed in or relied upon the existence of any such arrangement. Certainly the plaintiff did nothing to indicate that his claim was thus limited.[1] Indeed, he had the annual real property assessment on Lot 11—then thought by him to be the entire rectangle—issued in his name, and he paid the real property tax thus assessed from year to year. True, it was only to the owners of Lot 11 that this offered some indication that the plaintiff was exercising dominion over their land. However, the owners of Lot 11A, no less than the owners of Lot 11, should have observed that a rectangle including part of their property had been fenced off from the rest of Villa Santana and was being occupied by the plaintiff without their consent. In this record we find no factual basis for the claim of the owners of record that the plaintiff's continuing occupancy of their land was or appeared to be merely a permissive use in connection with his occupancy of a superficiary house. And one who enters land under a claim of right and possesses the land and its superstructures adversely to all others is not deemed to be the owner of a superficiary house simply because the land turns out to have been owned by another.

The judgment will be reversed and the cause remanded for the entry of a decree vindicating the plaintiff's claim of title to Lot 11 and Lot 11A as acquired in 1948, at the end of a 15 year period of adverse possession.

---

[1] It is of no probative significance that after the present controversy began and after the plaintiff's possession had continued much longer than 15 years, the local taxing authorities inserted new language in certain annual assessments to designate the dwelling as a "superficiary house."