**VIOLET DE JESUS, Plaintiff**

v.

**BERNARD DAVID & IVANIA DAVID, Defendants**

Civil No. 309/1990

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

August 13, 1990

81

ARCHIE ·JENNINGS, ESQ., St. Thomas, V.I., *for plaintiff*

ARTURO WATLINGTON, JR., ESQ., St. Thomas, V.I., *for defendants*

CHRISTIAN, *Judge*

## MEMORANDUM OPINION

### I. INTRODUCTION

This case came on for trial to the Court on July 10, 1990, before the Honorable Alphonso A. Christian, Judge, presiding. The Plaintiff appeared in person and by her attorney, Archie Jennings, Esquire. The Defendants appeared in person and by their attorney, Arturo Watlington, Jr., Esquire. The Court heard the testimony of the parties and their witnesses, and received in evidence such other pertinent proofs as were offered by them, and took the matter under advisement.[1]

### II. FINDINGS OF FACT

1. The grantor of Parcel No. 14D-5A Estate John's Folly, No. 14D Coral Bay Quarter, St. John, U.S. Virgin Islands, the ownership of which is in dispute, is Reginald Lancelot Wiltshire, the father of the Plaintiff and of the Defendant, Ivania David (hereafter "grantor").

2. By Deed of Gift dated April 20, 1983 (Plaintiff's Exhibit 4), Grantor conveyed to Plaintiff a one-half acre lot.

3. This Deed was recorded in the Office of the Recorder of Deeds in St. Thomas on May 3, 1988, in Protocol 32-D, Page 12, Document No. 1968.

4. This one-half acre lot was surveyed on March 27, 1988, by Louis L. Olive, Inc., Land Surveyor, and described as Parcel No. 14D-5 Estate John's Folly, No. 14D Coral Bay Quarter, St. John, U.S. Virgin Islands, with an area of 21,904 square feet or 0.5028 acre. (Plaintiff's Exhibit 1).[2]

---

[1] At the close of the trial, the Court requested both sides to submit suggested findings and/or post-trial briefs in seven days. Counsel for Plaintiff complied. To date, Counsel for Defendants has made no submission.

[2] Although the Deed is dated April 20, 1983, the second paragraph of the description

5. This survey was duly recorded on March 27, 1988, in the Cadastral Office at the Department of Public Works as P.W. Drawing No. D9-4276-T88.

6. On August 26, 1988, both Defendants, describing themselves as the owners, applied to the Department of Public Works for a Building Permit to construct a building with an estimated cost of $55,000.00 on No. 2 John's Folly, St. John. (See Plaintiff's Exhibit 11).

7. Parcel No. 2 John's Folly lies across a road about 1200 feet from the Plaintiff's one-half acre lot.

8. Because Public Works, according to common practice, required the submission of proof of ownership of the land on which the building will be erected, Defendants, despite the subdivision of March 27, 1988, describing the full half acre lot as Plaintiff's land, went to Surveyor John Campbell, and had him subdivide Plaintiff's one-half acre Parcel No. 14D-5 John's Folly, No. 14D Coral Bay Quarter, St. John, U.S. Virgin Islands, into two parcels, each with a quarter acre, which subdivision is dated June 12, 1989, and bears D.P.N.R. No. D9-4816-T1989. (See Plaintiff's Exhibit 3).

9. Armed with this survey, Defendants received from the Public Works Department the Building Permit for which they had applied on August 26, 1988.

10. Even before Mr. Campbell completed his subdivision of Plaintiff's lot on June 12, 1989, Defendants, on August 1, 1989, obtained a Deed from Grantor, conveying to them one-half of Plaintiff's lot, No. 14D-5A Estate John's Folly.

11. Ivania David testified, and the Court further finds, that even before Defendants applied for the Building Permit on land 1200 feet distant and across the road from the Plaintiff's lot, even before Defendants obtained their Deed to the lot, and even before they ob-

---

of the property conveyed reads: "Grantee selects boundary description for Parcel No. 14D-5, Estate John's Folly, No. 14D Coral Bay Quarter, St. John, U.S.V.I., P.W.D. Drawing No. D9-4276-T88". This survey is dated March 27, 1988. How could a Deed dated April 20, 1983, contain a parcel surveyed and described as late as March 27, 1988? The answer lies in the fact that the Deed was not finalized, and was not recorded, until after the survey, i.e., May 3, 1988. Defendants pointed out this apparent incongruity to the Court, but since the entry of Defendants on the scene relative to possession and/or ownership of one-half of the lot in question comes after all these events related to Plaintiff's conveyance (note the Court's Finding of Fact No. 6), the Court attaches no merit to their contention that the title of Plaintiff is thereby prejudiced, and Defendants are in anyway benefitted thereby.

tained their survey from John Campbell, they had begun to build on the Plaintiff's lot; and that the structure they built, which began as a storage room, has no concrete basement, cistern, or modern running water or sewage facilities, and has an alleged value of over $40,000.00.

12. Although Defendants were repeatedly asked by Plaintiff to discontinue constructing the unauthorized building, and a surveyor had told them they are wrongfully building on the Plaintiff's land, they continued to build until the Court issued a temporary restraining order, later converted into an interlocutory injunction, ordering them to discontinue the building of the structure.

13. The Plaintiff did give Defendants permission to build a storage room on Plaintiff's half-acre lot, but Defendants proceeded to attempt to dispossess Plaintiff of 50% of Plaintiff's lot, and to erect what they intended to be a permanent structure thereon, described by them as a cottage.

14. Because of the many problems created in the family by the conduct of the Defendants, Grantor executed what he described as a "Corrective Deed of Gift", dated December 8, 1989, which again gave Plaintiff the one-half acre of land he gave her in 1983, as particularly described on P.W.D. Drawing No. D9-4276-T88, in which Grantor stated:

> This Deed is to clarify the prior conveyance to Grantee of April 20, 1983, and to give full and final effect to said transfer. Additionally, this Deed is to remove all doubt as to the extent of the sites of the property conveyed and any other conveyance or instrument that is in conflict with this Deed is declared null and void. This document supercedes [sic] all other transfers made in relation to said parcel. In addition, this instrument is to be read and construed together with Grantor's Deed of Gift to Grantor's wife and Grantor's eleven children so as to give effect to both instruments.

(See Plaintiff's Exhibit 5).

15. The last clause of the penultimate paragraph of this December, 1989 "Corrective Deed" reads: "The real property conveyed by this instrument shall not be subdivided into lots for the purpose of conveying a separate lot or separate lots", which is precisely what Defendants are attempting to accomplish.

16. Grantor was in or about his eighties when he executed the three Deeds in question, but there is no dispute as to whether he executed all of them as his knowing and voluntary acts.

17. According to Defendants' Exhibit 2, they obtained an assessment for improvement on the land [assessed improvement], as distinguished from the land itself, or the land and improvement(s) erected thereon, quite likely a superficiary house. We do not believe they presented this document to the Court to prove they owned the land on which the improvement is built. Also, that Exhibit is not for Parcel 14D-5, the Plaintiff's lot, but for Parcel 14-5A. Additionally, the Court finds that the "A" was inserted in ink on the otherwise typewritten document, and no explanation was given the Court as to how this material change in the public document came about; moreover, the assessment is for the calendar year 1988, although Defendant Ivania David's Deed is dated as late as August 1 the following year; and, finally, on this aspect of the case, it is noteworthy that the assessment is not for the parcel which Defendants made application to Public Works on August 26, 1988, to build upon or the lot Public Works granted the permit to build upon, namely, No. 2 John's Folly, No. 14D Coral Bay Quarter, which it was testified is located about 1200 feet away and across the road from Plaintiff's Lot No. 14D-5 Estate John's Folly, but on a Part of Plaintiff's lot, described by Surveyor Campbell as 14D-5A Estate John's Folly.

18. While Defendants claim the structure they built has a fair market value of $40,000.00, they presented no proof—whether by appraisal(s), invoices, labor payrolls, or otherwise—by which the Court could make an objective finding as to the reliability of this assertion.

## III. THE ISSUES

Emerging from these facts to be decided by the Court are:

A. Who is the lawful owner of Lot No. 14D-5A Estate John's Folly, No. 14D Coral Bay Quarter, St. John, U.S. Virgin Islands? If Plaintiff is the lawful owner, then it follows a priori that her prayer for a permanent injunction must be granted. Conversely, if Defendant Ivania David is the lawful owner, Plaintiff's prayer for such relief must be denied.

We will find for Plaintiff on this issue.

B. Are Defendants entitled to restitution from Plaintiff for the fair market value of the improvements they erected on aforesaid lot?

Beyond the relief which we will grant Defendants in relation to Issue No. Three, the Court will also find for Plaintiff on this issue.

C. Are Defendants entitled to remove the structure they erected on aforesaid lot and deal with it as their property?

The Court will answer this question in the affirmative.

D. Should there be an award of compensatory or exemplary damages?

The Court will answer this question in the negative.

## IV. DISCUSSION

### A.

■■ Since Grantor executed all three Deeds as his knowing and voluntary acts, it follows that to the extent that the Deed dated August 1, 1989, conveying land to the Defendants, conflicts with the Deed dated April 20, 1983, clarified by the "Corrective Deed" dated December 8, 1989, conveying land to the Plaintiff, that Defendants' said Deed is a nullity. Grantor was categorical and very emphatic in his testimony that it was, and is, his intention to make Plaintiff the lawful grantee in fee of the one-half acre described in both Deeds of Gift to her. There has been no showing to the Court that Plaintiff's conveyance was obtained by any illegal conduct, e.g., fraud, misrepresentation, the exertion of undue influence, or otherwise, which in any way or to any degree impairs its validity. Therefore, the Court concludes as a matter of law that Plaintiff is the lawful owner, with a fee simple title, of Lot No. 14D-5A Estate John's Folly, No. 14D Coral Bay Quarter, St. John, U.S. Virgin Islands, and to the extent that Defendants built on any part of said lot beyond the permission granted them by Plaintiff to erect a storage room as a temporary, superficiary, readily removable structure, they are illegally on Plaintiff's land, and accordingly must be permanently enjoined from continuing such encroachment and continuing trespass.

### B.

Plaintiff raised the question in its post-trial brief of whether Defendants are entitled to restitution for what they built on Plaintiff's land. In James v. Bailey, 10 V.I. 382 (D.C.V.I. 1974), the District Court made an incisive analysis of the principles of law governing entitlement to restitution. The Court cited Section 42(1) of the Restatement of Restitution as the general Rule to be applied in such cases:

> Except to the extent that the rule is changed by statute, a person who, in the mistaken belief that he or a third person on whose account he acts is the owner, has caused improvements to

be made upon the land of another, is not thereby entitled to restitution from the owner for the value of such improvements.

The Court then proceeded to explain two evolving exceptions to the rule with which we shall deal briefly later in this opinion.

But the general rule is clearly inapplicable to the instant case in that the facts found establish beyond question that we are dealing with a case of a deliberate, albeit clumsy, attempt of two members of a family to illegally take away from another member of the family and permanently deprive her of part of the land granted to her by their father.

We say the act of Defendants was deliberate because of the chronology of the pertinent facts found and the only conclusion that can reasonably be drawn from these facts:

On August 26, 1988, Defendants applied to the Department of Public Works for a building permit to build a structure for $55,000.00, not on Plaintiff's land, but on No. 2 John's Folly, about 1200 feet across a road from Plaintiff's lot; when the Public Works Department required proof of ownership of No. 2 John's Folly, although Defendants knew of Plaintiff's Deed already recorded on May 3, 1988, and of open possession of Plaintiff on Plaintiff's one-half acre, they proceeded to obtain, not a survey of No. 2 John's Folly, but a subdivision of Plaintiff's lot, on June 12, 1989; obtained a Deed from Grantor to one-half of Plaintiff's lot on August 1, 1989; obtained a building permit dated November 18, 1988, to build, not on part of Plaintiff's land described by surveyor Campbell as "No. 14D-5A Estate John's Folly" where they were building, but on "No. 2 John's Folly, No. 14D Coral Bay Quarter"; asked and received permission from Plaintiff to build nothing more than a storage room on her land as a facility to build a permanent structure elsewhere; at first built what appeared to be a storage room, but later converted it into what they now describe as a cottage valuing about $40,000.00; and, although they were told by a surveyor they were building a permanent structure on Plaintiff's land, and asked by Plaintiff several times to cease and desist, continued to trespass and to build unlawfully on Plaintiff's land nevertheless.

Therefore, to the extent Defendants entered upon and built on Plaintiff's land described as Lot No. 14D-5A John's Folly beyond the construction of the storage room for which Plaintiff granted them permission, Plaintiff has no obligation under the general rule of restitution thus engrafted in the Restatements, and the common law, as cited above, to pay restitution to Defendants therefor.

We turn now to the two evolving exceptions to the rule pointed out in the Bailey case at 385. These exceptions clearly came about because of the growing recognition that in some cases the general rule, if applied with no modification whatever, could cause harsh and inequitable results.

Many jurisdictions have enacted statutes protecting the investment of a person who improves land which he later discovers is not his own. See Restatement of Restitution, Section 42, Comment (c); and 41 Am. Jur. 2d, Improvements, Section 5. But such statutes, known as occupying claimants acts or betterment statutes, usually apply only to cases in which the improver made an innocent mistake as to the validity of his title and was the possessor of land held with color of title. No such statute exists in the Virgin Islands, but even if there were such a statute it would be inapplicable to the instant case, as Defendants cannot truly and honestly claim to be persons who made improvements to the land under the mistaken belief that it was their property.

In the Bailey case at 385, the District Court then states "the second possible technique for avoiding the general common law rule [engrafted in the Restatement of Restitution] is to apply principles of equity to mitigate its harshness in particular cases". Reviewing these qualifications of the "no compensation" rule, the Court adds:

> First it should be noted that the widely accepted doctrines providing relief from the rule are all defensive. That is, they do not authorize an independent action by the improver but rather allow him a counterclaim or setoff in an action commenced by the true owner. Two of these exceptions are included in the Restatement of Restitution and require restitution to the improver (provided his mistake was reasonable) "to the extent that the land has been increased in value" whenever: (1) the true owner obtains a judgment in an equitable proceeding (perhaps clearing his title), or (2) the true owner commences an action of trespass or other action for mesne profits.

Obviously, since the general rule applies to the facts of the instant action, in that even if Defendants acted innocently, they would not be entitled to restitution, and no counterclaim was filed in the case (indeed, no pleadings of any type were filed by the Defendants), we agree with Plaintiff that it is not appropriate to consider granting Defendants any restitution other than as hereinafter provided.

88

## C.

■ Plaintiff testified that she gave Defendants permission to build a storage room on her land. This room, if limited to what the Plaintiff authorized, would be a superficiary house and the property of Defendants. According to Nicholson v. Altona Corporation, 3d Cir. 1963, 4 V.I. 472, 320 F.2d 8, 10–11, "a superficiary house shall be a property in which title to the land is vested in one owner and title to the building is vested in a separate owner". Id. at 476. "The law of the Virgin Islands recognizes that a superficiary house may be owned as personalty separate and apart from the support land rather than as a part of the realty. The owner of a superficiary house uses the land as a tenant or licensee for a term or at will and enjoys the right to remove the house whenever his tenancy or permissive use of the land is terminated". Meyers v. Canton, 7 V.I. 505.

■ Consequently, since from the facts found in this case, it is clear that Defendants had permission to erect a storage room on the land of the Plaintiff, while the land belonged to Plaintiff, the structure is and remains the property of Defendants, and they have a right to remove it when their license at will, which is the nature and extent of their interest in the land, is terminated. The fact that they built more than they were permitted to must be deemed to be their own calculated risk and their loss to the extent that they cannot recoup their investment if they attempt to remove the structure.

■ We hold that the termination of the relationship of the parties hereto with respect to the construction by Defendants on the land of the Plaintiff should be and is governed by the application of the following formula enunciated in the Nicholson case at 478:

When a person, e.g., a tenant, who is lawfully entitled or permitted by the owner to occupy a piece of land erects thereon or removes thereto a dwelling house the house (unless otherwise agreed) remains his personal property, even though annexed to the land, and does not become a part of the land or the property of the landowner. Correlatively, when the owner of a superficiary house vacates the land, either at his own option or because his tenancy or permission to occupy it has been terminated, it becomes his duty to remove the house from the land. If for any reason he fails to do so within a reasonable time he thereby relinquishes his ownership of the house to the owner of the land upon which it has been left. The latter thereafter may deal with

the house in any way he sees fit without incurring any obligation to account to its former owner for its value, use or destruction.

Defendants will be given thirty (30) days from the date of the Decree which will be entered in this case to remove any construction they erected on the subject premises, after which they will be permanently enjoined from entering on the land without Plaintiff's prior written permission.

### D.

■ Due to the rulings heretofore made, the relationship of the parties, the absence of adequate proof, and all the facts and circumstances of the case, we hold that Plaintiff is not entitled to an award of either compensatory or exemplary damages.

## V. CONCLUSION

Decree will be entered accordingly.

### DECREE

This matter came on for trial on July 10, 1990, before the Honorable Alphonso A. Christian, Judge, presiding. The Plaintiff appeared in person and by her attorney, Archie Jennings, Esquire. The Defendants appeared in person and by their attorney, Arturo Watlington, Jr., Esquire. The Court heard the testimony of the parties and their witnesses, received in evidence all other pertinent proofs presented by them, heard the arguments and representations of Counsel, and took the matter under advisement. The Court having issued its Memorandum Opinion in the case on even date herewith, and being fully advised and satisfied in the premises, it is hereby

ORDERED, ADJUDGED AND DECREED:

1. That the entire one-half acre of land known and described as Lot No. 14D-5 Estate John's Folly, No. 14D Coral Bay Quarter, St. John, U.S. Virgin Islands, including the lot subdivided therefrom by Surveyor John Campbell, and described as Lot No. 14D-5A Estate John's Folly, No. 14D Coral Bay Quarter, St. John, U.S. Virgin Islands, which half acre was granted to Plaintiff by her father, Reginald Lancelot Wiltshire, by Deed dated April 23, 1983, as clarified by "Corrective Deed" dated December 8, 1989, is the property of the Plaintiff by fee simple title absolute;

2. That, accordingly, Defendants, their agents, employees, servants, attorneys and all others acting on their behalf or pursuant to

their instructions or directions are permanently enjoined, restrained and prohibited from engaging in or conducting any activities on said described real estate, including, but not limited to, bulldozing and construction activities of whatever kind, type or nature, except as herein otherwise provided;

3. That Defendants are hereby empowered to enter upon said real estate and remove therefrom, within thirty (30) days from the date hereof, any and all property they have constructed, placed or located thereon; provided within said period of time they shall also remove all debris, trash, waste, or garbage they have caused to exist on the land and leave same in as clean, clear and natural a condition as is reasonable under the circumstances;

4. That Plaintiff's prayers for compensatory and exemplary damages are denied; and

5. That Plaintiff shall immediately record this Decree in the Office of the Recorder of Deeds in St. Thomas and file proof of such recording with the Court.